IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

TRACTION TIRE, LLC,

Plaintiff,

v.

TOTAL QUALITY LOGISTICS, LLC,

Defendant.

CIVIL ACTION
NO. 19-5150

## OPINION

**Slomsky, J.**                                                    **October 9, 2020**

## I.    INTRODUCTION

On September 30, 2019, Plaintiff Traction Tire, LLC ("Plaintiff") filed its original Complaint against Defendant Total Quality Logistics, LLC ("Defendant") and BOK Logistics, Inc. ("BOK")[1] in the Court of Common Pleas of Bucks County, Pennsylvania. (Doc. No. 1.) On October 31, 2019, the action was removed to this Court. (Id.)

Thereafter, on November 21, 2019, Plaintiff filed a First Amended Complaint ("FAC") alleging breach of contract claims against Defendant (Counts II and III) and a Carmack Amendment violation under 49 U.S.C. § 14706 against BOK in Count I.[2] (Doc. No. 12.)

---

[1]    In the original Complaint and First Amended Complaint, BOK was named as a defendant. (See Doc. Nos. 1, 12.) BOK did not respond to the FAC, and on April 30, 2020, a default was entered against BOK. (See Doc. Nos. 22, 23.) To date, Plaintiff has not moved for a default judgment pursuant to Federal Rule of Civil Procedure 55(b).

[2]    In the FAC, there are appears to be a typo as the latter two Counts are titled "Count II-Breach of Contract No. 1" and "Count II-Breach of Contract No. 2." (See Doc. No. 12.) The second "Count II" will be referenced in this Opinion as "Count III." As noted, a default has been entered against BOK on Count I.

1

On December 4, 2019, Defendant Total Quality Logistics, LLC, filed the instant Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6).  (Doc. No. 14.)  In the Motion, Defendant alleges that Plaintiff's breach of contract claims should be dismissed for three reasons.  First, they are precluded by the Carmack Amendment, 49 U.S.C. § 14706(a).[3]  (Id.)  Second, they are preempted by federal law, specifically the preemption provisions[4] of the Interstate Commerce Commission Termination Act ("ICCTA"), 49 U.S.C. § 14501(b),[5] and the Federal Aviation Administration Authorization Act ("FAAAA"), 49 U.S.C. § 14501(c)(1).[6]  (Id.)  Third, they consist only of conclusory allegations of unspecified contractual terms which are insufficient to state a claim for relief.  Defendant also argues that the damages Plaintiff seeks are "unavailable under the Carmack Amendment."  (Id. at 16.)

The Motion is now ripe for disposition.  For reasons set forth below, Defendant's Motion to Dismiss will be denied.

---

[3]  The Carmack Amendment's central objective is to "create a national scheme of carrier liability for goods damaged or lost during interstate shipment" pursuant to the terms of a valid and enforceable bill of lading.  Kotick v. Atlas Van Lines, Inc., 2019 WL 5388163, at *2 (D.N.J. Oct. 22, 2019).

[4]  Federal preemption occurs when the federal government enacts legislation on a subject that is controlling over state law or precludes a state from enacting a law on the same subject if Congress has "occupied the field."  Congressional power to preempt state law derives from the Supremacy Clause in Article VI, Clause 2 of the United States Constitution.  Id.; see Delaware & Hudson Ry. Co. v. Knoedler Mfrs., Inc., 781 F.3d 656 (3d Cir. 2015).

[5]  The ICCTA preemption provision preempts all state laws that may reasonably be said to have the effect of managing or governing rail transportation, while permitting the continued application of laws having a more remote or incidental effect on rail transportation.  See, e.g., Shupp v. Reading Blue Mountain, 850 F. Supp. 2d 490 (M.D. Pa. 2012).

[6]  The FAAAA preemption provision prevents states from imposing a patchwork of state laws covering trucking prices, routes, and services, with respect to motor carriers.  See, e.g., Bedoya v. Am. Eagle Express Inc., 914 F.3d 812 (3d Cir. 2019); see also S. REP. 104-176 (1995).

## II.    BACKGROUND

This case arises from the shipment of tires from Pennsylvania to Florida.  (Doc. No. 12.) Plaintiff Traction Tire, LLC is a tire supplier and distributor, and Defendant Total Quality Logistics, LLC, is a freight broker.  (Id.)

In the FAC, Plaintiff alleges the following facts.  In the summer of 2017, Plaintiff entered into an agreement with Defendant to coordinate the transportation of 590 tires from Plaintiff's facility in Bensalem, Pennsylvania, to its customers, Trotta Tire and Ace Tire, located in Fort Lauderdale and Miami, Florida, respectively ("Contract 1").[7]  (Id.)  Pursuant to Contract 1, the tires were to be picked up at Plaintiff's facility on August 25, 2017 and delivered to its customers in Florida by August 28, 2017.  In exchange for transporting the tires, Plaintiff agreed to pay Defendant $3,000.  (Id.)  The parties agreed to these terms.  (Id.)

Next, Plaintiff paid Defendant the $3,000 to ship the tires.  (Id.)  After receipt of payment, Defendant entered into a separate contract with BOK, a carrier, to physically transport the 590 tires to the customers in Florida.  (Id.)  BOK then issued a bill of lading for the tires.  (Id.)  On August 25, 2017, BOK picked up the tires at Plaintiff's facility.  (Id.)  A few days later, however, the tires were allegedly stolen from BOK's loaded trailer while it was left unattended in one of BOK's parking yards in West Palm Beach, Florida.  (Id.)  As a result, the 590 tires were never delivered to Plaintiff's customers nor were they ever returned to Plaintiff.  (Id.)

Upon learning that the tires had gone missing, Defendant contacted Plaintiff and explained what had happened.  (Id.)  Intent on retaining Plaintiff as a "valuable customer," Defendant

---

[7]    Nowhere in the record does it indicate that Contract 1 was memorialized in writing.

allegedly entered in another contract with Plaintiff ("Contract 2").[8]   (Id. 5-6.)   Defendant "explicitly represented" to Plaintiff that Defendant "would reimburse [Plaintiff] for its losses." (Id.)  In exchange, Plaintiff would "not ask [Defendant] for a refund of its $3,000 payment and [would] use [Defendant]'s services for multiple other endeavors." (Id.)  The parties agreed to these terms.  (Id.)

Following this agreement, Plaintiff continued to use Defendant's services.  According to Plaintiff, however, Defendant "reneged on the agreement" and "never paid [Plaintiff] a dollar for its losses nor did it refund [Plaintiff]'s $3,000 payment" for the 590 tires.  (Id. at 6.)

On September 20, 2019, Plaintiff filed its original Complaint against Defendant and BOK in the Court of Common Pleas of Bucks County, Pennsylvania.  (Doc. No. 1.)  Thereafter, on November 11, 2019, Plaintiff filed the FAC against Defendant and BOK.  (Doc. No. 12.)  In Count II and III of the FAC, Plaintiff asserts the two breach of contract claims against Defendant: (1) breach of contract for failure to deliver the 590 tires (Contract 1); and (2) breach of contract for additional expenses, costs, and interests (Contract 2).[9]  Further, Plaintiff alleges that as a direct result of Defendant's "failure to ensure the safe and efficient delivery of the tires," Plaintiff lost at least $1,000,000 in business as well as the value of the 590 tires, and the $3,000 that Plaintiff paid for its services.  (Doc. No. 12 at 6.)

In response, on December 4, 2019, Defendant filed the instant Motion to Dismiss the FAC. (Doc. No. 14.)  In the Motion, Defendant argues that Plaintiff has failed to state claims against it

---

[8]   Like Contract 1, nowhere in the record does it indicate that Contract 2 was memorialized in writing.

[9]   In Count I of the FAC, Plaintiff asserts a claim against BOK for "breach of duties under the Carmack Amendment."  (Doc. No. 12 at 3-4.)

under Federal Rule of Civil Procedure 12(b)(6).  (Id.)  As noted, to support this contention, Defendant argues that Plaintiff's breach of contract claims are precluded by the Carmack Amendment and preempted by the ICCTA and FAAAA's preemption provisions.  Defendant also contends that even if they are not precluded or preempted by the federal law, Plaintiff fails to establish the elements of a breach of contract claim.  (Id.)  Moreover, Defendant asserts that Plaintiff's claim for damages should also be dismissed.  (Id.)

On January 2, 2020, Plaintiff filed a Response in Opposition to Defendant's Motion to Dismiss. (Doc. No. 18.)  In the Response, Plaintiff asserts that the breach of contract claims against Defendant are not preempted by federal law and that it has sufficiently pled claims against Defendant for breach of Contracts 1 and 2.  (See Id.)  Moreover, Plaintiff contends that the requested damages are warranted.  (Id.)

## III.   STANDARD OF REVIEW

### A.  The Motion to Dismiss Standard under FRCP 12(b)(6) - Failure to State a Claim.

The motion to dismiss standard under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim is set forth in Ashcroft v. Iqbal, 556 U.S. 662 (2009).  After Iqbal it is clear that "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to defeat a Rule 12(b)(6) motion to dismiss.  Id. at 678; see also Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007).  "To survive dismissal, 'a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" Tatis v. Allied Interstate, LLC, 882 F.3d 422, 426 (3d Cir. 2018) (quoting Iqbal, 556 U.S. at 678). Facial plausibility is "more than a sheer possibility that a defendant has acted unlawfully."  Id. (quoting Iqbal, 556 U.S. at 678).  Instead, "[a] claim has facial plausibility when the plaintiff pleads

factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (quoting Iqbal, 556 U.S. at 678).

Applying the principles of Iqbal and Twombly, the Third Circuit in Santiago v. Warminster Township, 629 F.3d 121 (3d Cir. 2010), set forth a three-part analysis that a district court in this Circuit must conduct in evaluating whether allegations in a complaint survive a Rule 12(b)(6) motion to dismiss:

> First, the court must "tak[e] note of the elements a plaintiff must plead to state a claim." Second, the court should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." Finally, "where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief."

Id. at 130 (quoting Iqbal, 556 U.S. at 675, 679). The inquiry is normally broken into three parts: "(1) identifying the elements of the claim, (2) reviewing the complaint to strike conclusory allegations, and then (3) looking at the well-pleaded components of the complaint and evaluating whether all of the elements identified in part one of the inquiry are sufficiently alleged." Malleus v. George, 641 F.3d 560, 563 (3d Cir. 2011).

A complaint must do more than allege a plaintiff's entitlement to relief, it must "show" such an entitlement with its facts. Fowler v. UPMC Shadyside, 578 F.3d 203, 210-11 (3d Cir. 2009) (citing Phillips v. County of Allegheny, 515 F.3d 224, 234-35 (3d Cir. 2008)). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" Iqbal, 556 U.S. at 679 (alteration in original) (citation omitted). The "plausibility" determination is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id.

When determining whether a claim is plausible, a district court may also consider any affirmative defenses raised by the moving party.  "Technically, the Federal Rules of Civil Procedure require that affirmative defenses be pleaded in the answer."  Robinson v. Johnson, 313 F.3d 128, 135 (3d Cir. 2002) (citing Fed. R. Civ. P. 12(b)).  However, the so-called "Third Circuit Rule" allows affirmative defenses to be raised in a 12(b)(6) motion.  Id.; see also Ball v. Famiglio, 726 F.3d 448, 459 n.16 (3d Cir. 2013) cert. denied, 134 S. Ct. 1547 (U.S. 2014) ("[A] number of affirmative defenses that are not listed in Rule 12(b) [can] still be made by motion, provided that the basis of the defense [is] apparent on the face of the complaint.").

For instance, a statute of limitations defense may be raised in a motion to dismiss if "the time alleged in the statement of a claim shows that the cause of action has not been brought within the statute of limitations."  Robinson, 313 F.3d at 135 (quoting Hanna v. U.S. Veterans' Admin. Hosp., 514 F.2d 1092, 1094 (3d Cir. 1975)); see also Eddy v. Virgin Islands Water & Power Auth., 256 F.3d 204, 210 n.3 (3d Cir. 2001) ("qualified immunity may be raised in a motion to dismiss at the pleading stage . . . ."); Hartmann v. Time, Inc., 166 F.2d 127, 140 n.3 (3d Cir. 1947) (explaining that the defense of res judicata may be raised in the answer or in a motion to dismiss).

"Preemption is an affirmative defense that the defendant has the burden to prove."  Lupian v. Joseph Cory Holdings LLC, 905 F.3d 127, 130 (3d Cir. 2018); see In re Asbestos Prods. Liab. Litig. (No. VI), 822 F.3d 125, 133 n.6 (3d Cir. 2016).  Dismissal is appropriate under Rule 12(b)(6) "only when preemption is manifest in the complaint itself."  Lupian, 905 F.3d at 127.

## IV.   ANALYSIS

### A.   Plaintiff's Breach of Contract Claims Are Not Precluded by the Carmack Amendment

In the FAC, Plaintiff alleges two breach of contract claims against Defendant for (1) failing to ensure that the 590 tires were delivered to Plaintiff's customers under the first contract (Contract

1), and (2) failing to reimburse Plaintiff for its losses after it agreed to continue to use Defendant's services (Contract 2).  (Doc. No. 12.)  Defendant contends that these claims should be dismissed because they are precluded by the Carmack Amendment.  (Doc. No. 14.)

The Carmack Amendment holds carriers providing transportation services liable for actual loss or injury to property covered by a receipt or bill of lading.[10]  Reider v. Thompson, 339 U.S. 113, 119 (1950).  The Carmack Amendment, 49 U.S.C § 14706(a)(1), reads as follows:

> A carrier providing transportation…shall issue a receipt or bill of lading for property it receives for transportation under this part. That carrier and any other carrier that delivers the property and is providing transportation or service…are liable to the person entitled to recover under the receipt or bill of lading. The liability imposed under this paragraph is for the actual loss or injury to the property caused by (A) the receiving carrier, (B) the delivering carrier, or (C) another carrier over whose line or route the property is transported in the United States…

In Pelletron Corp. v. C.H. Robinson Worldwide, Inc., the court explained a carrier's liability under the Carmack Amendment:

> The Carmack Amendment requires carriers to issue a receipt or bill of lading for property received for transportation and holds carriers liable for actual loss or injury to the property resulting from the transportation thereof in claims arising out of the receipt or bill of lading.  A carrier is defined as "a motor carrier, a water carrier, and a freight forwarder."  A "motor carrier" is a "person providing commercial motor vehicle transportation for compensation."

2012 WL 3104845, at *2-*3 (E.D. Pa. July 31, 2012) (emphasis added.); see 49 U.S.C. § 14706(a)(1); 49 U.S.C. § 13102(3),(14).

Contrasted with a carrier, a broker is not liable under the Carmack Amendment for the value of goods lost in interstate commerce.  Pelletron Corp, 2012 WL 3104845, at *2-*3.  The Third Circuit has explained that "a carrier is liable for damages incurred during a shipment of goods, whereas a broker—someone who merely arranges for transportation—is not liable."  Tryg

---

[10]  "Bill of lading" is a transportation contract between a shipper/consignor, i.e., a seller of goods, and a carrier.  Paper Magic Grp., Inc. v. J.B. Hunt Transp., Inc., 318 F.3d 458 (3d Cir. 2003).

Ins. v. C.H. Robinson, Worldwide, Inc., 767 F. App'x 284, 285 (3d Cir. 2019) (citing 49 U.S.C. § 14706); see Louis M. Marson Jr., Inc. v. All. Shippers, Inc., 438 F. Supp. 3d 326, 331 (E.D. Pa. 2020).

A broker is defined as "a person, other than a motor carrier or an employee or agent of a motor carrier, that as a principal or agent sells, offers for sale, negotiates for, or holds itself out by solicitation, advertisement, or otherwise as selling, providing, or arranging for, transportation by motor carrier for compensation." 49 U.S.C. § 13102(2).

Here, Plaintiff and Defendant do not dispute that Defendant is a broker.[11]  (See Doc. No. 14.)   Instead, Defendant argues that the FAC should be dismissed because Plaintiff's breach of contract claims in Counts II and III, the only Counts in which claims are brought against it, are precluded by the Carmack Amendment.  (Doc. No. 14 at 13.)   This argument is without merit.

Pelletron Corp. v. C.H. Robinson Worldwide, Inc. is a case directly on point.  In Pelletron, the plaintiff entered into a contract with the defendant to transport plaintiff's goods to a customer in California in exchange for payment.  2012 WL 3104845, at *1 (E.D. Pa. July 31, 2012). Defendant next contracted with CHR, a shipping company, to transport plaintiff's goods from Pennsylvania to California.  (Id.)  While in transit, the goods were stolen from CHR's truck. (Id.) Plaintiff subsequently filed a breach of contract claim against defendant and CHR.  (Id. at * 2.) Defendant argued that plaintiff's claim should be dismissed because defendant acted as a broker and brokers are not liable under the Carmack Amendment.  (Id.) The court rejected the defendant's argument stating that"[w]hile the Carmack Amendment does not apply to brokers, it does not

---

[11]   At the summary judgment stage, courts have concluded that there are issues of fact as to whether an entity is a "carrier" or a "broker" for purposes of the Carmack Amendment.  See, e.g., Pelletron Corp. v. C.H. Robinson Worldwide, Inc., 2012 WL 3104845, at *1 (E.D. Pa. July 31, 2012).  This is not an issue in this case because there is no dispute that Defendant is a "broker."

preempt state law claims against brokers."  (Id. at *3.), and cited Commercial Union Ins. Co. v. Forward Air, Inc., 50 F.Supp.2d 255, 257 (S.D.N.Y.1999) ("In short, this case requires the court to decide whether the Carmack Amendment, in omitting reference to the liability of brokers for damage to shipped goods, intended to afford brokers total immunity from such a suit. The Court concludes that the Carmack Amendment does not bar suits against brokers.").

In this case, Defendant, a broker, entered into a contract with Plaintiff to arrange for the shipment and transportation of Plaintiff's goods from Pennsylvania to Florida in exchange for the payment of $3,000.  Following this agreement, Defendant contracted with BOK to physically transport the tires from Pennsylvania to Florida.  While in transit from Plaintiff's facility, the tires were stolen from inside BOK's truck.  Because Defendant is a broker and not a carrier, the Carmack Amendment does not preclude Plaintiff's breach of contract claims against Defendant and for this reason and others, infra, Counts II and III will not be dismissed.

### B.  Plaintiff's Breach of Contract Claims Are Not Preempted by the ICCTA and FAAAA

Next, Defendant contends, that the breach of contract claims fail because they are preempted by the provisions of the ICCTA and FAAAA, cited infra.  (Doc. No. 14.)

The doctrine of preemption is derived from the Supremacy Clause of Article VI of the Constitution, which provides that "the Laws of the United States ... shall be the supreme Law of the Land."  U.S. Const. art. VI, cl. 2.  State law "which interferes with or is contrary to federal law, must yield."  Free v. Bland, 369 U.S. 663, 667 (1962).  As noted supra, "[p]reemption is an affirmative defense that the defendant has the burden to prove."  Lupian, 905 F.3d 127, 130 (3d Cir. 2018); see In re Asbestos Prods. Liab. Litig. (No. VI), 822 F.3d 125, 133 n.6 (3d Cir. 2016).  Dismissal is appropriate under Rule 12(b)(6) "only when preemption is manifest in the complaint itself."  Lupian, 905 F.3d at 127.  Courts must begin their analysis by "applying a presumption

against preemption." Cipollone v. Liggett Group, Inc., 505 U.S. 504, 516 (1992). "In areas of traditional state regulation, we assume that a federal statute has not supplanted state law unless Congress has made such an intention clear and manifest." Bates v. Dow Agrosciences LLC, 544 U.S. 431, 449 (2005).

When determining whether a federal law preempts an entire field, "[o]ur inquiry into the scope of a statute's pre-emptive effect is guided by the rule that '[t]he purpose of Congress is the ultimate touchstone in every pre-emption case.'" Altria Group, Inc. v. Good, 555 U.S. 70, 129 (2008). And the Supreme Court has recognized that there is a presumption against preemption of an entire "field" unless congressional intent to preempt is clear. Kurns v. R.R. Friction Prod. Corp., 565 U.S. 625, 132 (2012).

In the instant Motion to Dismiss, Defendant asserts that field preemption applies here because Plaintiff's breach of contract claims intrude upon a field where "[c]ongress has set forth a detailed, comprehensive statutory and regulatory scheme that entirely controls cargo clams." (Doc. No. 14 at 12-13.) In other words, Defendant argues that the preemption provisions of the ICCTA and  FAAAA preempt Plaintiff's state law breach of contract claims.

The ICCTA's preemption provision provides:

> no State or political subdivision thereof and no intrastate agency or other political agency of 2 or more States shall enact or enforce any law, rule, regulation, standard, or other provision having the force and effect of law relating to intrastate rates, intrastate routes, or intrastate services of any freight forwarder or broker.

49 U.S.C. § 14501(b)(1).

The FAAAA's preemption provision provides:

> a State, political subdivision of a State, or political authority of 2 or more States may not enact or enforce a law, regulation, or other provision having the force and effect of law related to a price, route, or service of any motor carrier (other than a carrier affiliated with a direct air carrier covered by section 41713(b)(4)) or any

motor private carrier, broker, or freight forwarder with respect to the transportation of property.

49 U.S.C. § 14501(c)(1).

The Third Circuit explained that the ICCTA's preemption provision preempts all "state laws that may reasonably be said to have the effect of managing or governing rail transportation, while permitting the continued application of laws having a more remote or incidental effect on rail transportation." New York Susquehanna and Western Railway Corp. v. Jackson, 500 F.3d 238, 252 (3d Cir. 2007).[12]   Because the tires were transported by a motor carrier, not by rail transportation, the preemption provisions of the ICCTA would not apply here.

With respect to the FAAAA's preemption provision, the Third Circuit has explained that this provision "prohibit(s) states from effectively re-regulating the trucking industry and [ ] promote[s] 'maximum reliance on competitive market forces.'" Lupian, 905 F.3d 127 at 135.  The court further stated that:

> The preemption clause undoubtedly applies, for example, to state laws directly restricting types of goods that can be carried by trucks, tariffs, and barriers to entry. But state law may also be preempted if it has an indirect effect. This intent is patent in the FAAAA insofar as the preemption clause employs the phrase "related to" immediately before "a price, route, or service of any motor carrier."

49 U.S.C. § 40101(a)(6);  Id. § 14501(c)(1).[13]

But "[w]hile the FAAAA and the ICCTA preempt many state law tort law claims against motor carriers, transportation brokers, and freight forwarders, many courts have held that federal

---

[12]   Congress narrowly tailored the ICCTA's pre-emption provision to displace only those state laws that may reasonably be said to have the effect of managing or governing rail transportation.  See 49 U.S.C. § 10501(b); see also Hackensack Riverkeeper, Inc. v. Delaware Ostego Corp., 450 F. Supp. 2d 467 (D.N.J. 2006).

[13]   The purpose of the FAAAA's preemption clause is to prohibit states from effectively re-regulating the trucking industry and to promote "maximum reliance on competitive market forces."  See 49 U.S.C. § 40101(a)(6); see also Lupian, 905 F.3d 127 at 135.

law does not preempt routine breach of contract claims."  See, e.g., Am. Airlines, Inc. v. Wolens, 513 U.S. 219, 229–230 (1995); Huntington Operating Corp. v. Sybonney Express, Inc., 2009 WL 2423860, at *1 (S.D. Tex. Aug. 3, 2009) (holding that breach of contract claims are not preempted by § 14501 of the FAAAA); Chatelaine, Inc. v. Twin Modal, Inc., 737 F. Supp. 2d 638, 643 (N.D. Tex. Aug. 20, 2010) (holding that 49 U.S.C. § 14501 broadly preempts state law claims except for breach of contract and noting that ICCTA and FAAAA "preemption is not to interfere with contractual obligations between two private parties");  see also Hartford Fire Ins. Co. v. Dynamic Worldwide Logistics, Inc., 2017 WL 3868702, at *3 (D.N.J. Sept. 5, 2017); Lyn–Lea Travel Corp. v. Am. Airlines, 283 F.3d 282, 287 (5th Cir. 2002) (holding that the ADA does not preempt breach of contract claims).

Faced with this plethora of law permitting the breach of contract claims to proceed, Defendant still contends that the FAAAA applies to this case because Plaintiff's breach of contract claims are "related to" the "services" that Defendant provided as a broker with respect to the transportation of property.  (Doc. No. 14 at 10.)  Defendant relies on Frey v. Bekins Van Lines, Inc., to support its argument.  802 F. Supp. 2d 438 (E.D.N.Y. 2011).

In Frey, customers filed a class action suit against a motor carrier and its agent who were involved in interstate transportation of household goods.  Id.  According to the customers, the motor carrier and its agent engaged in a pattern and practice of quoting lower shipping prices than those ultimately charged.  Id.  The customers filed state law claims for fraud, negligence, unjust enrichment, and violation of state consumer protection laws against the motor carrier.  The court held that these claims were preempted by the FAAAA because they were "related to a price, route, or service" of motor carrier of property.  Id.  But unlike the tort claims asserted in Frey, Plaintiff

is asserting here claims against Defendant for breach of Contracts 1 and 2, which are not tort claims, and they are permitted to be brought under the law.

In a case factually similar to the instant one, <u>Huntington Operating Corp. v. Sybonney Express, Inc.</u>, which is cited above, the plaintiff employed the defendant, a transportation broker, to arrange the shipment of perfume from Florida to Texas.  2009 WL 2423860, at *1.  Defendant then employed Sybonney Express, Inc., a motor carrier, to pick up the cargo in Miami, Florida, and deliver it to Huntington in Houston, Texas.  (<u>Id.</u>)  While in transit from Miami, Florida, to Houston, Texas, the perfume shipment was stolen at a truck stop in Pasco County, Florida.  (<u>Id.</u>)  Plaintiff then filed a breach of contract claim against defendant and in response defendant filed a motion to dismiss.   (<u>Id.</u>)  The court held that breach of contract claim is not preempted by the ICCTA and FAAAA.  (<u>Id.</u>)

 Thus, because Plaintiff's claims are for breach of contract, the provisions of the ICCTA and FAAAA do not preempt these claims against Defendant.

### B.  Plaintiff Has Sufficiently Pled a Breach of Contract Claim against Defendant Regarding Contract 1

In Count II of the FAC, Plaintiff asserts a breach of contract claim against Defendant for failing to deliver the 590 tires to Plaintiff's customers pursuant to Contract 1.  (Doc. No. 12.)  Under Pennsylvania law, a claim for breach of a contract requires specific pleading of three elements: (1) the existence of an enforceable contract, including its material terms; (2) breach of a duty imposed by the contract; and (3) resultant damages.  <u>Gladstone Tech., Partners, LLC</u>, 222 F. Supp. 3d at 432.

In the Motion to Dismiss, Defendant argues that even when accepting the allegations asserted in the FAC as true, as required at the motion to dismiss stage, Plaintiff has not plausibly alleged these three elements regarding Contract 1.  (<u>See</u> Doc. No. 14.)  The Court will therefore

consider the facts alleged in the FAC to determine if these elements are supported by plausible facts that would entitle Plaintiff to relief.

### 1.   The Existence of an Enforceable Contract

First, Defendant argues that Plaintiff's breach of contract claim regarding Contract 1 fails because Plaintiff's claim "consist[s] only of conclusory allegations of unspecified contractual terms," which do not create an enforceable contract.  (Doc. No. 14 at 16.)

A contract is enforceable under Pennsylvania law if there is "(1) a manifestation of an intent to be bound by the terms of the agreement, (2) sufficiently definite terms, and (3) an agreement supported by adequate consideration."[14] Szymanski v. Sacchetta, 2012 WL 246249, at *4 (E.D. Pa. Jan. 26, 2012) (citing Johnston the Florist, Inc. v. TEDCO Constr. Corp., 657 A.2d 511, 516 (Pa.Super.1995)).  "Where ... there is no agreement or even a discussion as to any of the essential terms of an alleged bargain, such as time or manner of performance, or price or consideration, the 'agreement' is too indefinite for a party to reasonably believe that it could be enforceable."  iEcore Int'l, Inc. v. Downey, 343 F. Supp. 3d 459, 489 (E.D. Pa. 2018).

Moreover, an oral contract may exist under Pennsylvania law.  A party relying upon an alleged oral contract must prove that a mutual intent to be bound was manifested, even though it was not memorialized in writing.  Bennett v. Itochu Int'l, Inc., 2012 WL 3627404, at *16 (E.D. Pa. 2012).  Existence of an oral contract must be established by clear and precise evidence. Reynolds v. Univ. of Pennsylvania, 483 F. App'x 726 (3d Cir. 2012).  A contract, even an oral one, is enforceable if the promise or the agreement of the parties to is clear, certain, and explicit,

---

[14]   Defendant does not contest the first and third elements of enforceability of a contract. Defendant merely argues that Plaintiff has failed to establish the second element, that there were sufficiently definite terms to Contract 1.  Thus, there is no need to review the sufficiency of the allegations in the FAC on the first and third elements.

so that their full intention may be ascertained to a reasonable degree of certainty.  Browne v. Maxfield, 663 F. Supp. 1193, 1198 (E.D. Pa. 1987).[15]

In the FAC, Plaintiff alleges that it entered into a  Contract 1 with Defendant to coordinate the transportation of the tires.  Under the terms of Contract 1, Defendant was to transport 590 tires from Plaintiff's facility in Bensalem, Pennsylvania, to its customers in Fort Lauderdale and Miami, Florida.  (Id. at 2.)  The tires were to be picked up from the facility on August 25, 2017 and delivered to the customers by August 28, 2017.  (Id.)  In exchange for the transportation, Plaintiff was to pay Defendant $3,000.  (Id.)

Accepting these allegations as true, Plaintiff has plausibly pled sufficiently definite terms of Contract 1.  As stated earlier, the parties agreed that Defendant would be paid $3,000 for its services.  (Doc. No. 12.)  They also agreed to a time in which the tires would be picked up from Plaintiff's facilities, which was August 25, 2017.  (Id.)  They further agreed to a time the tires would be delivered to Plaintiff's customers, which was August 28, 2017.  (Id.)  Accordingly, Contract 1 has clear, certain, and explicit terms on price, time, location, and manner of performance.

Despite the specificity, Defendant contends that Contract 1 is not an enforceable because Plaintiff did not attach a written contract to the FAC, which is evidence that no contract existed.

---

[15]   Defendant also argues that Plaintiff's breach of contract claims "fail to comply with the Statute of Frauds" because Contract 1 and 2 were not memorialized in writing.  (Doc. No. 14.)  The Statute of Frauds requires certain types of contracts to be in writing for them to be enforceable. These agreements are the (1) sale of transfer of land; (2) sale of goods costing more than $500; (3) contracts that involve performance that cannot be finished within a one-year timeframe; (4) contracts that will still be outstanding after one of the parties has passed away; (5) marriage and other family law contracts; (6) surety contracts.  Because Contracts 1 and 2 are not in these categories, Defendant's argument is unpersuasive.

(Doc. No. 14 at 16.)   But Plaintiff is relying on the existence of an oral contract.[16] "Communications between parties**,** may be sufficient to establish a contract." <u>Reynolds Packaging KAMA, Inc. v. Inline Plastics Corp.</u>, 2011 WL 5089500, at *8 (M.D. Pa. 2011).

Accordingly, regarding Contract 1, Plaintiff has plausibly pled the first element of its breach of contract claim.

### 2.  Breach of Duty

Second, Defendant argues that Plaintiff's breach of contract claim for Contract 1 fails because there is no evidence that Defendant breached any duty owed to Plaintiff.  (Doc. No. 14.) "[W]hen performance of a duty under a contract is due any non-performance is a breach." <u>Atl. Holdings, Ltd. v. Apollo Metals, Ltd.</u>, 263 F. Supp. 3d 526, 530 (E.D. Pa. 2017).

Here, regarding the breach of duty element in relation to Contract 1, Plaintiff avers that Defendant breached its duty of performance under the contract "[b]y reason of failing to ensure that, in hiring BOK, BOK would safely and efficiently deliver the tires to the intended destinations in Florida."  (Doc. No. 12 at 5.)

As plausibly alleged in the FAC, Defendant had a duty to safely and timely deliver the 590 tires to Plaintiff's customers in Florida by August 25, 2017.  It failed to do so because the tires were stolen.  Accordingly, regarding Contract 1, Plaintiff has sufficiently pled the second element in its breach of contract claim.

### 3.  Damages

Third, Defendant argues that Plaintiff's breach of contract claim fails because the damages that Plaintiff seeks are unavailable under the Carmack Amendment.  (<u>See</u> Doc. No. 14 at 17-19.)

---

[16]  Plaintiff does not rely on the bills of ladings as the contracts because Defendant was not a party to these documents.  The bills of lading were between Plaintiff and BOK Logistics, Inc.

The Carmack Amendment, however, does not preempt Plaintiff's state law breach of contract claims against Defendant and its damages provision does not apply here.

Under Pennsylvania law, "expectation damages" is the preferred approach in breach of contract cases because they place the injured party in the position that would have resulted from receiving the benefit of the bargain.  <u>Crown Coal & Coke Co. v. Powhatan Mid-Vol Coal Sales, L.L.C.</u>, 929 F. Supp. 2d 460 (W.D. Pa. 2013).  The standard measurement for expectation damages are recovery of the losses caused and gains prevented by defendant's breach, to the extent that are in excess of any savings made possible by nonperformance.  <u>Id.</u>

Here, Plaintiff asserts that "[a]s a result of [Defendant]'s failure to ensure the delivery of the 590 tires to their intended destinations in Florida, [Plaintiff] has suffered damages exceeding $1,050,000, exclusive of additional expenses, costs, and interest."[17]  (Doc. No. 12 at 5.)  Under Contract 1, the tires were not delivered and as a result Plaintiff at the very least suffered damages in the amounts of $27,703.55 and $21,662.40 according to the bills of lading.  (<u>Id.</u> at 14, 20.)  Thus, in viewing the facts in the light most favorable to Plaintiff, it has plausibly shown that it suffered damages due to the nonperformance of the contract.

For all these reasons, at the motion to dismiss stage, Plaintiff has stated a cognizable claim for breach of Contract 1.  Accordingly, Defendant's Motion to Dismiss Count II will be denied.

---

[17]   Plaintiff requests damages in the "amount of $1,050,000, plus interest, fees, costs, and such other relief as this Court deems just and proper."  (Doc. No. 12 at 6.)  Defendant asserts that it is unaware of how this amount is derived and claims that the inventory value as reflected on the bills of lading is less than $50,000.  Defendant believes that Plaintiff is seeking what it terms "special damages" by including the request for relief of over $1 million dollars.  (Doc. No. 14.)  At the motion to dismiss stage, the Court need not determine the specific amount of damages at issue, only that Plaintiff has established that it has incurred damages from the loss of its tires.

### C. Plaintiff Has Sufficiently Pled a Breach of Contract Claim against Defendant Regarding Contract 2

In the FAC, Plaintiff alleges a second contract arose when Plaintiff and Defendant agreed that the latter would reimburse Plaintiff for its losses and in return Plaintiff would continue to use the services of Defendant and not seek a refund of the $3,000 payment.  This contract is referred to as Contract 2 and Plaintiff alleges that it was breached by Defendant.  (Doc. No. 12.)  As stated earlier, under Pennsylvania law, a claim for breach of a contract requires specific pleading of three elements: (1) the existence of a contract, including its material terms; (2) breach of a duty imposed by the contract; and (3) resultant damages.  Gladstone Tech., Partners, LLC, 222 F. Supp. 3d at 432.  Defendant argues that even when accepting the allegations asserted in the FAC as true, Plaintiff has not established these elements regrading Contract 2.

#### 1. The Existence of an Enforceable Contract

First, Defendant once again argues that Plaintiff's breach of contract claim regarding oral Contract 2 fails because Plaintiff's claim "consist[s] only of conclusory allegations of unspecified contractual terms" and therefore do not create an enforceable contract.  (Doc. No. 14 at 16.)

As noted previously, a contract is enforceable under Pennsylvania law if there is "(1) a manifestation of an intent to be bound by the terms of the agreement, (2) sufficiently definite terms, and (3) an agreement supported by adequate consideration." [18]  Szymanski v. Sacchetta, 2012 WL 246249, at *4 (E.D. Pa. Jan. 26, 2012) (citing Johnston the Florist, Inc. v. TEDCO Constr. Corp., 657 A.2d 511, 516 (Pa.Super.1995)).

---

[18]   Like Contract 1, Defendant does not contest here that the first and third elements of enforceability of a contract.  Defendant merely argues that Plaintiff has failed to establish the second element, that there were sufficiently definite terms to Contract 2.  Thus, there is no need to review the sufficiency of the allegations in the FAC on the first and third elements.

In the FAC, Plaintiff argues that the parties entered into an enforceable oral Contract 2.

Plaintiff describes in the FAC the details of the conversation between Plaintiff and Defendant:

> 9.  Following the incident, a representative from [Defendant] called [Plaintiff] directly and notified [Plaintiff] that, according to BOK, all of the tires were stolen during transport when BOK's driver left the loaded trailer unattended overnight in one of BOK's parking yards in West Palm Beach, Florida.

> 10. Pivotally, the representative from [Defendant] also told [Plaintiff] that, as not to jeopardize the parties' establish business relationship, [Defendant], would reimburse [Plaintiff] for its losses and, in exchange, [Plaintiff] did not ask [Defendant]for a refund of its $3,000 <u>and</u> continued to use [Defendant's] services for multiple endeavors…

(Doc. No. 12 at 3.)

In addition, the FAC contains the following allegations:

> 11. [Plaintiff] fulfilled all of its obligations under Contract No. 2.  However, in direct breach of its obligations, [Defendant] never reimbursed traction.

> 12. Furthermore, BOK has not offered [Plaintiff] a single dollar for its losses.

> 13. While [Plaintiff] has since made repeated demands to [Defendant] and BOK for information surrounding the purported theft, as well as for compensation for the stolen tires and the resultant lost business, both [Defendant] and BOK have been entirely unresponsive.

> 14. As a direct result of [Defendant]'s and BOK's failure to ensure the safe and efficient delivery of the tires, and [Defendant]'s breach of Contract Nos. 1 and 2, [Plaintiff] has lost business in excess of $1,000,000 as well as the value of the 590 tires.  In addition, [Defendant] never refunded the $3,000 [Plaintiff] paid for its services.

(<u>Id.</u>)

Accepting these allegations as true, Plaintiff has plausibly shown that the parties intended to be bound by Contract 2.  After the tires were stolen from BOK's truck, Defendant contacted Plaintiff.  Not to lose Plaintiff as a customer, Defendant offered to reimburse Defendant for its losses.  In return, Plaintiff agreed to forgo a refund of the $3,000 and continued to use Plaintiff's services.  At the motion to dismiss stage, these terms show an intent to be bound by the contract.

Next, the contract had sufficiently definite terms.  Defendant would reimburse Plaintiff for its losses and Plaintiff would not seek a refund of the $3,000.  Moreover, Plaintiff would continue to use Defendant's service for shipment of its products.

Plaintiff has also established that Contract 2 was supported by sufficient consideration. Under Pennsylvania law, consideration sufficient to support an enforceable contract confers a benefit upon the promisor or causes a detriment to the promisee and must be an act, forbearance or return promise bargained for and given in exchange for the original promise.  Crump v. MetaSource Acquisitions, LLC, 373 F. Supp. 3d 540 (E.D. Pa. 2019).  As stated supra, in the FAC, Defendant promised to reimburse Plaintiff for the lost tires, in exchange for Plaintiff not requesting a refund of the $3,000 and promising and continuing to use Defendant's business.  In other words, both parties as promisors received a benefit under Contract 2 which contained bargained for mutual promises.  Thus, at this stage in the litigation, Plaintiff has plausibly pled that Contract 2 was supported by sufficient consideration.

Therefore, when viewing the facts in the light most favorable to Plaintiff, it has established that Contract 2 was an enforceable contract.

### 2.  Breach of Duty

Next, Defendant argues that Plaintiff's breach of contract claim for Contract 2 fails because there is no evidence that Defendant breached any duty owed to Plaintiff.  (Doc. No. 14.)  "[W]hen performance of a duty under a contract is due any non-performance is a breach."  Atl. Holdings, Ltd. v. Apollo Metals, Ltd., 263 F. Supp. 3d 526, 530 (E.D. Pa. 2017).

Here, regarding the breach of duty element of Contract 2, Plaintiff avers that Defendant breached its duty when it "reneged on the agreement and never paid [Plaintiff] a dollar for its losses; nor did it refund [Plaintiff's] $3,000 payment."  (Doc. No. 12 at 6.)  Based on the terms of

Contract 2, it is plausible that Defendant had a duty to reimburse Plaintiff for its losses and Defendant breached that duty when it failed to do so.

### 3. Damages

Defendant once again avers that Plaintiff's breach of contract claims fail because the damages associated with Contract 2 are "special damages" which are only recoverable under a bill of lading.[19]  (Doc. No. 14 at 17.)  But as noted <u>supra</u> in footnote 17, at the motion to dismiss stage, the Court need not determine the specific damages at issue, only that Plaintiff has established that it has incurred damages from the loss of its tires.

For all these reasons, Plaintiff has stated a cognizable claim for breach of Contract 2. Accordingly, Defendant's Motion to Dismiss Count III will be denied.

## V.   CONCLUSION

For the foregoing reasons, Defendant's Motion to Dismiss (Doc. No. 14) will be denied. An appropriate Order follows.

---

[19]   Defendant also argues that Plaintiff's breach of contract claim regarding Contract 2 fails because the damages that Plaintiff seeks are unavailable under the Carmack Amendment. (Doc. No. 14.)  As noted <u>supra</u>, the Carmack Amendment does not preempt Plaintiff's state law breach of contract claims against Defendant.